IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LAKEYLAH WHITE                                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO. 4:20-CV-161-SA-JMV

CITY OF GRENADA, MISSISSIPPI, et al.                                              DEFENDANTS

ORDER

On August 14, 2020, Lakeylah White initiated this action by filing her Complaint [2] in the Circuit Court of Grenada County, asserting various claims against the City of Grenada; Mayor Billy F. Collins; Assistant Mayor and City Council Member Frederick Pete Wilson; City Council Member Warren Cox, Sr.; and City Manager Trina N. George. After removing the case to this Court, the Individual Defendants and the City filed separate Motions to Dismiss [6, 8]. The Motions [6, 8] have now been fully briefed.[1]

*Factual and Procedural Background*

The City has a council-manager government structure in which there are seven Council members (one of whom, Fredrick Pete Wilson, serves as the Vice Mayor) and a Mayor. Billy Collins served as the Mayor at all times pertinent to this action. The Mayor serves as the presiding officer over the City Council ("the Council") but only votes when there is a tie between the Council members. In addition to suing the City, the Plaintiff brings claims against two Council members,

---

[1] The Court notes that the Plaintiff's Responses [18, 20] exceed the page limitation and requirements set forth in Local Rule 7(b)(2)(B) which states that "a motion may not exceed four pages" and "may contain only the grounds for the request and may not contain legal argument or citations to case law or other secondary authority." Here, the Plaintiff's Responses [18, 20] to the Motions [6, 8] are 15 and 17 pages respectively and contain legal argument. The Court notes that the Plaintiff did not seek leave of Court to file Responses beyond the limitations in L. U. Civ. R. 7(b)(2)(B). The Court will nonetheless consider the arguments in the Plaintiff's briefing.

Fredrick Pete Wilson and Warren Cox, Sr.; Mayor Billy Collins; and her replacement as City Manager, Trina George.

The Plaintiff lived in Hattiesburg, Mississippi but had worked with the City for a number of years through her business, Grants Unlimited. The Plaintiff, through Grants Unlimited, was approved on August 13, 2019 to administer the 2019 HOME Rehab Grant for the City. One day later, on August 14, 2019, the Council voted to appoint the Plaintiff to the City Manager position in a six to one vote. The Plaintiff and the Council did not enter into a written employment agreement; however, the minutes from the August 14 meeting reflect that the Council voted to hire the Plaintiff as the City Manager beginning on August 19, 2019, for a term of eight months, and at a salary of $75,000.00. On August 19, 2019, the same day the Plaintiff began her job as the City Manager, the Council and the Mayor had a specially called meeting to discuss the hiring and failure to advertise the opening for the City Manager position. The Plaintiff attended the meeting and asserts that there was a "heated discussion" but that, other than Councilman Cox trying to have the other members of the Council question why they hired the Plaintiff as the City Manager, the City took no action. [2] at p. 11.

The Plaintiff further asserts that the Council had verbally agreed to pay her relocation expenses which totaled to $5,000.00. However, the Mayor and Council held another specially called meeting on August 27, 2019 at which they voted not to pay the relocation expenses. As a result, the Plaintiff asserts that she incurred thousands of dollars in travel expenses as she stayed in hotels from August to November of 2019 since her family was still living in Hattiesburg. The Plaintiff asserts that the Mayor and Council told her multiple times that they were working on getting relocation expenses for her, but she was never paid any such expenses.

On November 4, 2019, the Council held another specially called meeting. The Plaintiff attended the meeting until she was asked to leave the room when the meeting was called into executive session. Councilman Cox made a motion and recommended to the Mayor that the Council vote to remove the Plaintiff from her position and hire Trina George, another City employee, as Interim City Manager with a salary of $85,000.00 per year. The Council approved the motion in a five to one vote. The Council did not provide the Plaintiff with any reasons for her termination nor do the minutes from the November 4, 2019 meeting reflect any such reasons.

Despite being terminated from her position as City Manager, the Plaintiff still held the position of a grant administrator through her business Grants Unlimited, in light of the Council's August 13, 2019 decision to permit Grants Unlimited to administer the grant. On November 12, 2019—only eight days after the Plaintiff was removed as City Manager, the Council voted to hire North Central Planning and Development District ("NCPDD") to administer the grant instead of Grants Unlimited. George presented the option to the Council to hire the new business to administer the grant. Subsequently, on December 2, 2019, the Plaintiff approached the Council and addressed the issue of who would now be tasked with administering the grant seeing as the Plaintiff's firm, Grants Unlimited, had previously been awarded the responsibility of administering the grant. The City then investigated the replacement and later reversed the Council's decision. The reversal did not fully reinstate Grants Unlimited. Rather, the City instructed the Plaintiff that she would have to seek NCPDD's approval for her reinstatement. The Plaintiff and NCPDD reached an agreement, and the Plaintiff and her business, Grants Unlimited, were reinstated to help administer the grant.

During the grant administration process, the Plaintiff denied George's parents from receiving funds under the grant due to a conflict of interest since they were a City employee's

3

parents. City officials challenged the Plaintiff's decision as to this issue and made claims for an exemption. Collins contacted the Department of Housing and Urban Development, arguing that an exemption existed for the parents of a City employee. The Mississippi Home Corporation then reviewed the matter and affirmed the Plaintiff's decision.

The Plaintiff now brings claims against the City for breach of contract, a violation of Due Process, and a violation of the Mississippi Tort Claims Act; claims against Collins under Section 1983 for either a violation of her constitutional rights or supervisory liability; claims against Wilson and Cox under Section 1983 for a violation of her constitutional rights; and claims against George under Section 1983 for a violation of her constitutional rights. All issues have been fully briefed and are ripe for review.

*Standard of Review*

"When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff." *Runnels v. Banks*, 2012 WL 2839802 at *1 (S.D. Miss. July 10, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)). A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citation omitted). It need not contain detailed factual allegations, but it must go beyond formulaic recitations of the elements of a cause of action, labels, or legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "To be plausible, the complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

4

*Analysis and Discussion*

As noted above, White asserts multiple claims against multiple Defendants. She first asserts a breach of contract claim against the City of Grenada (Count I), and she then alleges due process violations against the City of Grenada (Count II). Count III is labeled "Claims Under the Mississippi Tort Claims Act" and includes an allegation of "contract interference," in addition to contentions that "Grenada and its City Council did not enter the employment agreement in good faith . . . and the resulting actions taken against Plaintiff White were in bad faith and constituted a tortious breach as well." [2] at p. 26. She also asserts under this claim that "Grenada engaged in a pattern of deliberate harassment of Plaintiff White." *Id*. at p. 27. She additionally contends that the "tortious conduct alleged herein was retaliatory on the part of the City and its officials[.]" *Id*.

In Count IV, which is labeled "Claims Against Defendant Collins," White alleges that "the individual defendants under Section 1983 were personally involved in the deprivation of a right secured by the laws or Constitution of the United States or the defendants' wrongful actions were causally connected to such deprivation." *Id*. at p. 28. She then contends that Collins' actions constituted deliberate indifference. Count V is labeled "Claims Against Defendants Wilson and Cox" and she avers:

> 123. Plaintiff White would show that the individual defendants under Section 1983 were personally involved in the deprivation of a right secured by the laws or Constitution of the United States or the defendants' wrongful actions were causally connected to such deprivation. The actions of the individual defendants demonstrated a deliberate indifference toward the constitutional rights of Plaintiff White and such failure and actions caused a constitutional injury to Plaintiff White.
>
> 124. Plaintiff White would show that she suffered a violation of a constitutionally protected right and that right was clearly

5

> established at the time of the alleged misconduct. Defendants Collins and Cox's actions caused Plaintiff White to suffer constitutional injuries for which Plaintiff White seeks a recovery.

*Id*. at p. 30. (The Court also notes that the Plaintiff mentions Defendant *Collins* in her allegation in Paragraph 124, not Defendant *Wilson*.)

In Count VI, which she labeled "Claims against Defendant George," she includes synonymous allegations to that quoted above in connection with Wilson and Cox. Finally, Count VII is labeled "Constitutional Claims against City of Grenada." *Id*. at p. 32. The allegations under that Count include contentions that the City failed to comply with Mississippi Code Section 21-9-27 in terminating her employment, in addition to alleging that "Grenada for purposes of Section 1983 is a 'person' subject to suit for actions that are directly attributed to it through some official action of the City. Defendant Grenada's 'official policy' to terminate the employment of a City Manager in violation of state law although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. at p. 32-33. She then states that the "official policy was the 'moving force' behind Plaintiff White's constitutional violation and there is a direct causal link between the policy and the constitutional violation[.]" *Id*. at p. 33.

As mentioned above, the City and the Individual Defendants responded by filing separate Motions to Dismiss [6, 8]. The Individual Defendants at the outset point out that in the claims against them, "White invokes Section 1983, without mention of which specific constitutional provision these defendants supposedly violated. Such an omission is impermissible, for Section 1983 is not a source of substantive rights but instead a jurisdictional vehicle for remedying particular constitutional violations. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)." [7] at p. 3. The Individual Defendants further state "[i]t is *assumed* that White is suggesting that her due

6

process rights have been violated[.]" *Id.* (emphasis added). The City notes many of these same deficiencies in its Memorandum [9].

After a careful review of White's Complaint [2] and the record as a whole, the Court finds that White's Complaint [2] itself is the source of much confusion. For example, while White includes a general section in her Complaint [2] for due process, when she asserts specific claims as to specific parties, she does not state which constitutional rights she contends were violated. In Count III, which she refers to as claims under the Mississippi Tort Claims Act, she includes a myriad of allegations relating to contract interference, failure to enter into a contract in good faith, tortious breach, deliberate harassment, and even makes reference to retaliation. Furthermore, the Plaintiff separates her claims against Wilson and Cox from her claims against George but the contentions set forth under each Count are the same. It is unclear to this Court why these particular Council Members were selected as Defendants while other Council Members were not, and it is similarly unclear what conduct she intends to pursue against each of the Individual Defendants.

As to the federal claims, the Court, as was noted by the Defendants, emphasizes that Section 1983 itself does not provide substantive rights. *See Mabry v. Lee Cnty.*, 100 F. Supp. 3d 568, 572 (N.D. Miss. Mar. 30, 2015) (quoting *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004)). However, as to the claims against the Individual Defendants, the Plaintiff does not specify the constitutional rights which she alleges were violated.[2] Although her Complaint [2] contains extensive factual allegations, she does not link those factual allegations to any particular constitutional rights when she lists her Counts for relief. Furthermore, although separating her claims against the different Individual Defendants

---

[2] Again, the Court notes that earlier in her Complaint [2], she makes general contentions that her substantive and procedural due process rights were violated, but she does not state the substantive rights she intends to pursue as to each of the Individual Defendants in each Count against them.

7

into multiple separate Counts, the allegations under each Count is the same, and she does not specify the conduct for which she seeks relief as to each Individual Defendant.

The Court finds these failures troubling, as they place the Defendants, as well as the Court, in the unenviable position of attempting to discern the Plaintiff's intent. As quoted above, the Individual Defendants even noted in their Memorandum that they *assumed* the Plaintiff was pursuing due process claims. The Court finds that proceeding on an assumption is not appropriate, particularly in light of the fact that the Defendants have raised the defense of qualified immunity, which requires the Court to inquire into the reasonableness of the specific conduct at issue. *See*, *e.g.*, *Estate of Stacks v. Prentiss Cnty., Miss.*, 2013 WL 1124395, at *7 (N.D. Miss. Mar. 18, 2013) ("To satisfy the second prong of the qualified immunity analysis, Plaintiffs must show that the Individual Defendants' conduct was objectively unreasonable in light of the then clearly established law."); *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp. 2d 570, 585 (N.D. Miss. Aug. 10, 2011) (citation omitted) (noting that qualified immunity protects public official from suit "unless their conduct violates a clearly established constitutional right").

This Court has previously addressed similar situations related to pleading deficiencies. *See*, *e.g.*, *Sudduth v. Lowndes Cnty., Miss.*, 2019 WL 982961, at *4 (N.D. Miss. Feb. 28, 2019) ("Although Sudduth clearly enumerates the facts giving rise to his claims generally, he advances a list of seven constitutional violations with no link between the alleged violations and the facts, and no indication of which alleged violations and related facts, he relies upon for his federal claims against the County."); *see also Michael v. Boutwell*, 2015 WL 2728516, at *6 (N.D. Miss. Feb. 19, 2015) (describing problems with complaints that fail to adequately link factual allegations to claims, and appropriate procedural solutions); *Clinton v. Johnson*, 2014 WL 575295, at *2-3 (S.D. Miss. Feb. 11, 2014) (same).

8

The Court finds that White has failed to adequately link her factual allegations to her claims, creating a situation where although her claims conform to the liberal notice pleading requirements of Federal Rule of Civil Procedure 8, she fails to adequately link the causes of action to their attendant factual predicates, in violation of Federal Rule of Civil Procedure 12(e). *See Burkhart v. Tecnocap, LLC*, 2012 WL 32923, at *2 (N.D. W. Va. Jan. 6, 2012) (citing 5B Wright & Miller *Federal Practice and Procedure* § 1356) ("A Rule 12(e) motion has a higher standard than that of a Rule 12(b)(6) motion in that a pleading which satisfies the liberal pleading standards . . . may be nonetheless appropriately challenged as overly vague with a Rule 12(e) motion.").

As to her state law claims, the Court notes that while she utilizes one label of "Claims Under the Mississippi Tort Claims Act," she includes references to contract interference, failure to enter into a contract in good faith, tortious interference with contract, deliberate harassment, and retaliation. This Court has previously explained:

> Shotgun pleadings, which are prohibited by the Federal Rules, are characterized as complaints containing several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.

*Sahlein v. Red Oak Capital, Inc.*, 2014 WL 3046477, at *3 (N.D. Miss. July 3, 2014). As this Court has previously noted, "[s]hotgun complaints are problematic because they force a 'trial court to sift out the irrelevancies, a task that can be quite onerous.'" *Michael*, 2015 WL 728516, at *6 (quoting *Sahlein*, 2014 WL 3046477 at *3).

"District courts have a 'supervisory obligation to sua sponte order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates.'" *Michael*, 2015 WL 728516 at *6 (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006)).

9

Recognizing this obligation, the Court finds that the Plaintiff should be required to replead. In so doing, she should remain cognizant of the requirement to link the claims to their factual predicates, as well as the prohibition on shotgun complaints. The Plaintiff is specifically advised that failure to file an amended pleading as directed may result in the Court striking her original Complaint [2] or dismissing the case.

*Conclusion*

For the reasons set forth above, the Plaintiff is hereby ORDERED to file an Amended Complaint within fourteen (14) days of today's date. The Defendants' present Motions [6, 8] are DENIED *without prejudice* as MOOT. If they so choose, the Defendants may refile Motions to Dismiss once the Plaintiff files her Amended Complaint.

SO ORDERED, this the 28th day of September, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE